UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN W. BARTON,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS; AMERICAN AMICABLE LIFE INSURANCE COMPANY OF TEXAS; FAST & EASY MARKETING LLC; HEGEMON GROUP INTERNATIONAL LLC; SILVER SHIELD LIFE LLC; SHAWN AKERS; AND JOHN DOES 1-10,<br><br>    Defendants. | Case No. 3:25-cv-05671-TMC<br><br>ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS |

## I. INTRODUCTION

Before the Court is Defendant American Family Life Assurance Company of Columbus's ("Aflac") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7(d)(4). Dkt. 26. Plaintiff Nathen Barton alleges that Aflac, through the use of telemarketers, sent him unwanted phone calls in violation of state and federal law. Dkt. 1-2. For the following reasons, Aflac's motion is GRANTED IN PART and DENIED IN PART.

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 1

## II.    BACKGROUND

Defendants are a collection of insurance companies and telemarketers. Mr. Barton alleges that his cell phone number was registered on the Federal Trade Commission's national Do Not Call Registry ("DNCR") in 2021. Dkt. 1-2 ¶¶ 63, 260–61, 303. Mr. Barton further alleges that the defendant insurance companies Aflac and American-Amicable Life Insurance Company of Texas ("American-Amicable") coordinated with the telemarketer defendants to sell him final expense (or burial) insurance ("FEI") policies through unsolicited phone calls. *Id.* ¶¶ 66–67. According to Mr. Barton, the defendant insurance companies would give the defendant telemarketers a "financial incentive" to make calls to find leads, as well as give "access to their computer systems for pricing and uploading customers, [and] permission to use their business names." *Id.* ¶ 67. Barton also alleges that the defendant telemarketers would hide their phone numbers with "spoofed" numbers and would hide their businesses' names by providing aliases such as "US Funeral Expenses." *Id.* ¶¶ 68, 70–73, 307.

Mr. Barton lists all the phone calls he received from Defendants in a table with the columns "Date," "Phone #," "Script," "WA," "DNC," and "Notes." *Id.* ¶ 246. The "Date" column includes the date when Mr. Barton received the unsolicited call. *Id.* The "Phone #" column contains "the caller id [number] the caller was transmitting." *Id.* The calls would either begin with a pre-recorded script or an actual person on the other end of the receiver. *Id.* ¶¶ 71–73. Whether the call started with a prerecording (letters "A" to "M," referencing specific scripts) or an actual person ("Voice") is noted in the "Script" column. *Id.* ¶ 246. If the "WA" column contains a checkmark, then

> on that call Mr. Barton told the caller he resided in Washington State, or in Zip code 98607, or both, or . . . the caller told Mr. Barton that the caller already knew Mr. Barton resided in Washington State.

*Id.* ¶ 244. If the "DNC" column contains a checkmark, then "Mr. Barton told the caller not to call his phone number again, or the caller told Mr. Barton that his number was already on the callers do-not-call list." *Id.* ¶ 245. The last column, "Notes," contains sporadic entries including the names of specific callers and the policies they were selling. *Id.* ¶ 246.

The complaint lacks clarity, but the calls attributable to Aflac are

| Date | Phone # | Script | WA | DNC | Notes |
|---|---|---|---|---|---|
| February 3, 2025 | 972 379 3629 | Voice | ✓ | | "Caller said from American Benefits. Pitched FEI from American Amicable and [Aflac] by name," |
| February 3, 2025 | 360 263 4785 | Voice | | | "Follow up call, agent was selling FEI for [Aflac]." |
| February 26, 2025 | 985 304 8016 | Voice | | ✓ | "Calling about [Aflac] FEI" |
| June 16, 2025 | 972 764 2867 | E | ✓ | ✓ | "Caller pitched FEI from [Aflac] and American Amicable." |

*Id.*

During the first call on February 3, 2025, Mr. Barton purchased an Aflac FEI policy from the telemarketer to learn the telemarketer's identity. *Id.* ¶¶ 231, 237. Mr. Barton received a follow-up call on the same day for the policy that he purchased. *Id.* ¶ 246. Aflac later provided Mr. Barton the telemarketer's information. *Id.* ¶ 232.

Mr. Barton received another phone call selling Aflac's FEI policy on February 26, 2025. *Id.* ¶ 246.

On March 4, 2025, Mr. Barton reached out to counsel for Aflac, telling them about the unwanted calls he had been receiving. *Id.* ¶¶ 236–37. He also asked for help in canceling his Aflac policy, as he "only purchased it to see who was calling," and to confirm that his "(972)

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 3

207-5749" number was on Aflac's do not call list. *Id.* On March 10, 2025, counsel for Aflac responded that "I have shared your email with my client." *Id.* ¶ 238.

On June 16, 2025, Mr. Barton received another phone call pitching an FEI policy from Aflac. *Id.* ¶ 246. It began with a pre-recording using "Script E." *Id.*

In July 2025, Mr. Barton served the defendants a complaint captioned for Clark County Superior Court. *Id.* at 2–3. Mr. Barton alleges that Defendants violated the Telephone Consumer Protection Act of 1991 ("TCPA"), the Washington Automatic Dialing and Announcing Device Act ("WADAD"), RCW 80.36.400, and the Washington Commercial Telephone Solicitation Act ("WCTSA"), RCW 80.36.390, with their unsolicited phone calls. *Id.* ¶¶ 260–304. American-Amicable removed the case to federal court on July 31, 2025. Dkt. 1.

On September 4, 2025, Aflac moved to dismiss this matter. Dkt. 26. Mr. Barton responded on September 7, 2025. Dkt. 30. Aflac replied on October 2, 2025. Dkt. 50.

### III.    LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, "in a case alleging the same claim[s] against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group." *Trusov v. Or. Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251, at *2 (D. Or. Sept. 20, 2023); *see Evans v. Sherman*, No. 119CV00226DADBAMPC, 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) (noting that a plaintiff who "simply lumps all defendants together . . . makes it impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants), *report and recommendation adopted*, No. 119CV00226DADBAMPC, 2021 WL 136394 (E.D. Cal. Jan. 14, 2021); *Wright v. City of Santa Cruz*, No. 13–cv–01230–BLF, 2014 WL 5830318, at *5 (N.D. Cal. Nov. 10, 2014) ("These allegations are inadequate because they lump all defendants together and fail to allege the factual basis for each defendant's liability.").

## IV.    DISCUSSION

Mr. Barton's complaint contains fifteen claims, six under federal law and nine under state law.[1] Dkt. 1-2 ¶¶ 260–304.

### A.    Federal Claims

Before considering each federal claim in turn, the Court will consider whether Aflac can be held vicariously liable for the telemarketers' alleged conduct under the TCPA. The Court concludes that Mr. Barton has sufficiently alleged (1) that the telemarketers had apparent authority to act on Aflac's behalf and (2) that Aflac ratified the telemarketer's actions, rendering Aflac vicariously liable for their conduct.

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Hollis v. Exp Realty LLC*, No. C25-0822JLR, 2025 WL 2711424, at *3 (W.D. Wash. Sept. 23, 2025) (alteration in original). "[V]icarious liability must be based upon at least one of the following theories: (1) apparent authority, (2) actual authority, or (3) ratification." *Id.* (citing *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018)). Relevant here, apparent authority exists "when a third party reasonably believes the [agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 WL 1012471, at *2 (9th Cir. Apr. 5, 2022) (quoting RESTATEMENT (THIRD) OF AGENCY § 2.03 (AM. L. INST. 2006)). And "[a] person ratifies an act by (a) manifesting assent that the act shall affect the person's legal

---

[1] Mr. Barton's numeration of claims goes to sixteen but does not include the number four. *See* Dkt. 1-2 ¶¶ 262–68, 300–04. The Court will use the numbers as written in Mr. Barton's complaint just as Aflac does.

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 6

relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* (quoting RESTATEMENT (THIRD) OF AGENCY § 4.01(2) (AM. L. INST. 2006))

"To state a vicarious liability claim, a plaintiff cannot rely solely upon allegations that a call was 'made simply to aid or benefit the seller . . . if agency principles would not impose vicarious liability . . . for the call.'" *Hollis*, 2025 WL 2711424, at *3 (quoting *In re Joint Pet. Filed by Dish Network*, *LLC*, 28 F.C.C. Rcd. 6574, 6585 (2013)). But a plaintiff need not develop all facts regarding the agency relationship in the complaint, nor are they required to plead a particular vicarious liability theory to proceed on that theory. *Id.*

Going through three theories of vicarious liability, Aflac argues that Mr. Barton fails to offer sufficient facts to support a reasonable inference that an agency relationship existed between Aflac and the telemarketers. Dkt. 26 at 5–8. First, Aflac contends that Mr. Barton has not established liability through a theory of actual authority because the complaint lacks "allegations of control," such as "direct[ing the telemarketers] to make cold calls that violate the TCPA or that [Aflac] has any control over whom its agents call." *Id.* at 6 (second alteration in original) (quoting *Jorge Valdes v. Nationwide Real Est. Execs., Inc.*, No. SACV2001734DOCJDEX, 2021 WL 2134159 (C.D. Cal. Apr. 22, 2021)). Second, Aflac contends that Mr. Barton has not established apparent authority because "[t]he fact that the [telemarketers] mentioned Aflac is insufficient to show apparent authority." *Id.* at 7. Third, Aflac contends that the theory of ratification is unhelpful to Mr. Barton because "he does not plausibly allege that Aflac knew about the initial caller's alleged lack of compliance with the TCPA and Washington's telemarketing laws." *Id.* at 8.

Focusing on three facts, Mr. Barton argues that Aflac is vicariously liable through the theories of apparent liability and ratification. Dkt. 30 at 2. First, the telemarketer sold an Aflac policy that Aflac "*then issued,*" and "[w]ho but an [Aflac] agent can sell an Aflac final expense

insurance policy[.]" *Id.* (citing Dkt. 1-2 ¶ 232). Second, "[Aflac] knew the name, phone number, and address of their phone agent who sold the [Aflac] policy." *Id.* Mr. Barton concludes that Aflac is vicariously liable through apparent authority or ratification because the telemarketer "communicated to [him] that he had the power to make phone calls selling [Aflac's] insurance policies," and Aflac "confirmed [the telemarketers'] authority to call [him and to sell Aflac] insurance policies by issuing a policy resulting from [the telemarketer's] phone call." *Id.*

The Court finds that Mr. Barton has sufficiently alleged vicarious liability between Aflac and the telemarketers to survive a motion to dismiss pursuant to Rule 12(b)(6). At the pleadings stage Mr. Barton is not required to develop all the facts surrounding the agency relationship, nor is he required to plead a particular vicarious liability theory to proceed on that theory. *Hollis*, 2025 WL 2711424, at *3. Mr. Barton alleges that Aflac gave the telemarketers "access to their computer systems for pricing and uploading customers [and] permission to use their business names," and continued "to do business with [t]he [t]elemarketers even as they received complaints of unwanted telemarketing." Dkt. 1-2 ¶ 67. He also alleges that the telemarketer sold him an actual Aflac policy, and he got the telemarketer's information from Aflac. *Id.* ¶¶ 231–32. This supports a theory of apparent authority, as one could reasonably believe that the telemarketers had the authority to act on behalf of Aflac. *McCurley*, 2022 WL 1012471, at *2. Mr. Barton also alleges that he contacted counsel for Aflac to stop the unwanted calls on March 4, 2025, counsel informed Aflac, and he received another call selling Aflac products on June 16, 2025. Dkt. 1-2 ¶¶ 236–39, 246. This supports a theory of ratification as it is "conduct that justifies a reasonable assumption that [Aflac] consents" to the telemarketer's conduct. *McCurley*, 2022 WL 1012471, at *2 (quoting RESTATEMENT (THIRD) OF AGENCY § 4.01(2) (AM. L. INST. 2006)).

*1.    Claim one: 47 U.S.C. § 227(b)*

Under 47 U.S.C. § 227(b) it is unlawful to "make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service" absent statutory exceptions. 47 U.S.C. § 227(b)(1)(A), (A)(iii).

Aflac argues that claim one should be dismissed because Mr. Barton's complaint is "wholly devoid of allegations sufficient to saddle Aflac with liability for a non-agent third party's unlawful conduct, especially since the caller was allegedly pitching another insurer's policy on the same call." Dkt. 50 at 6; Dkt. 26 at 8–9.

Mr. Barton has sufficiently alleged that the June 16, 2025 phone call violated § 227(b). He alleges that on that day he received a prerecorded phone call from a telemarketer selling Aflac products. Dkt 1-2 ¶ 246. Additionally, Aflac provides no case law to support its argument that vicarious liability is terminated when an agent serves multiple principals. To the contrary, "[a]n agent can serve multiple principals at once, even principals that are competing with one another." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1250 (10th Cir. 2013) (citing RESTATEMENT (THIRD) OF AGENCY § 3.14 cmt. b (AM. L. INST. 2006)). Aflac's motion to dismiss claim one is DENIED.

*2.    Claim two: 47 U.S.C. § 227(c)*

47 U.S.C. § 227(c) authorizes the creation of the DNCR. "Subsection § 227(c)(5) of the TCPA creates a private right of action for '[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]'" *Barton v. George*, No. C25-5110-KKE, 2025 WL 3078287, at *6 (W.D. Wash. Nov. 4, 2025) (alterations in original) (quoting 47 U.S.C. § 227(c)(5)).

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 9

However, a caller can avoid liability under this section if they have an "established business relationship" with the call recipient. *See* 47 U.S.C. § 227(a)(4); 47 C.F.R. 64.1200(c)(2).

Aflac makes several arguments. First, Aflac contends that Mr. Barton's expressed interest in and the purchase of an Aflac policy created an established business relationship that covers the February 26, 2025 and June 16, 2025 calls. Dkt. 50 at 6–7. The Court disagrees. An established business relationship under 47 C.F.R. § 64.1200(f)(5) occurs "between a person or entity and a residential subscriber." *Flores v. Access Ins. Co.*, No. 215CV02883CASAGRX, 2017 WL 986516, at *8 (C.D. Cal. Mar. 13, 2017) ("[T]he established business relationship and commercial purpose exemptions 'do not apply to cellular phones; rather, these exemptions apply only to autodialed calls made to land-lines.'" (quoting *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 273 (3d Cir. 2013)). Here, Mr. Barton alleges that he received these three calls on his cellular phone. Dkt. 1-2 ¶ 261.

Aflac also argues that Mr. Barton refers to multiple "phone numbers" in the complaint but fails to note "which number(s) received the four calls that mentioned Aflac." Dkt. 50 at 7–8; Dkt. 26 at 10–11. Mr. Barton responds that these statements were typographical errors, and only one phone received the calls. Dkt. 30 at 7. The Court finds that Mr. Barton has alleged a single phone as the recipient of the calls and has provided its number. "It is an entrenched principle that *pro se* filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers." *United States v. Qazi*, 975 F.3d 989, 992–93 (9th Cir. 2020) (internal quotation marks omitted) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). Although Mr. Barton simultaneously alleges the use of a single phone and multiple phones in his pleadings, given his *pro se* status and his provided clarification that he used only a single phone, the Court will construe the use of the plural as a typographical error. *Rothschild v. Pac. Cos.*, No. 23-CV-01721-LJC, 2024 WL 2112898, at *1 n.2 (N.D. Cal. Apr. 26, 2024) ("Mr. Rothschild

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 10

simultaneously alleges that he lives in and is domiciled in Arizona, but only provides an address in Cape Coral, Florida . . . In deference to his *pro se* status, the Court will construe this as a typographical error."). Additionally, Mr. Barton provides the phone number as part of his description of his email to Aflac's counsel. Dkt. 1-2 ¶ 237 ("[C]an you make sure you have (972) 207-5749 on Aflac's do not call list?").

Mr. Barton has sufficiently alleged that he received more than one telephone call within a 12-month period, to a phone number on the DNCR, by or on behalf of the same entity. Dkt. 1-2 ¶ 246. Accordingly, Aflac's motion to dismiss claim two is DENIED.

*3.        Claim three: 47 C.F.R. § 64.1200(a)(7)*

Under 47 C.F.R. § 64.1200(a)(7),

> [n]o person or entity may . . . [a]bandon more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30-day period for a single calling campaign. If a single calling campaign exceeds a 30-day period, the abandonment rate shall be calculated separately for each successive 30-day period or portion thereof that such calling campaign continues. A call is 'abandoned' if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

Aflac argues that Mr. Barton has not sufficiently alleged a violation of § 64.1200(a)(7) because he claims that the calls occurred over several months. Dkt. 26 at 11. Mr. Barton does not directly address Aflac's argument in his response, *see* Dkt. 30, and Aflac contends that Mr. Barton has waived the claim. Dkt. 50 at 6.

Mr. Barton alleges that "the majority of calls" made by "the Telemarketer" were abandoned and did not "meet the two second requirement." Dkt. 1-2 ¶ 263. For the following reasons, Mr. Barton has not sufficiently alleged claim three. First, given how many defendants are named in the complaint, it is unclear whether "the Telemarketer" mentioned is the telemarketer selling Aflac products. Second, it is unclear whether the calls on February 3, 2025, February 26, 2025, and June 16, 2025 are within "the majority of calls" that were abandoned and

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 11

did not meet the two-second requirement. Third, with Mr. Barton's failure to "respond substantively to the arguments raised in" Aflac's motion, he has waived this claim. *Freeze v. Gallagher*, No. C23-1135JLR, 2024 WL 3744407, at *6 (W.D. Wash. Aug. 9, 2024), *reconsideration denied*, No. C23-1135JLR, 2024 WL 3924581 (W.D. Wash. Aug. 23, 2024). Accordingly, Aflac's motion to dismiss claim three is GRANTED.

> **4.    *Claim five: 47 C.F.R. § 64.1200(b)***

47 C.F.R. § 64.1200(b) regulates "artificial or prerecorded voice telephone messages." 47 C.F.R. § 64.1200(b)(1)–(3). Only the June 16, 2025 call fits within Mr. Barton's fifth claim. Dkt. 1-2 ¶ 246.

To support their request to dismiss this claim, Aflac repeats their argument about vicarious liability. Dkt. 26 at 11–12. As mentioned previously, the Court finds Mr. Barton has sufficiently alleged facts demonstrating that Aflac is vicariously liable for several calls. *See supra.* Therefore, the Court considers the merits of whether the June 16, 2025 phone call violated § 64.1200(b). The Court will consider the three subsections in turn.

Subsection one requires prerecorded voice calls to

> [a]t the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. If a business is responsible for initiating the call, the name under which the entity is registered to conduct business with the State Corporation Commission (or comparable regulatory authority) must be stated.

47 C.F.R. § 64.1200(b)(1). Mr. Barton alleges that the scripted prerecording began with "Hi. This is Hannah Walker. I'm with US funeral expenses." Dkt. 1-2 ¶ 103. He alleges that US Funeral Expenses is an alias of a Florida corporation named Fast & Easy Marketing LLC. *Id.* ¶¶ 49, 233–35. Although this prerecording appears to provide an "identity of [a] business," Mr. Barton plausibly alleges that the name is not "the name under which the entity is registered to conduct business with the State" regulatory authorities.

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 12

Subsection two requires prerecorded voice calls to either "[d]uring or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual." 47 C.F.R. § 64.1200(b)(2). Here, Mr. Barton provides the script of the prerecording used in the June 16, 2025 call, which does not include the business's telephone number. Dkt. 1-2 ¶ 103.

Subsection three requires prerecorded voice calls to "provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section." 47 C.F.R. § 64.1200(b)(3). As alleged, the script used in the June call did not provide Mr. Barton an opportunity to opt-out from future calls. Dkt. 1-2 ¶¶ 103, 268.

Mr. Barton has sufficiently alleged that the June 16, 2025 call violated 47 C.F.R. § 64.1200(b). Accordingly, Aflac's motion to dismiss claim five is DENIED.

> 5.    *Claim six: 47 C.F.R. § 64.1200(d)(4)*

Under 47 C.F.R. § 64.1200(d)(4),

> [a] person or entity making . . . any call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

Mr. Barton claims that "[w]ith few exceptions" Defendants did not supply the information required by this section. Dkt. 1-2 ¶ 270. In response to this claim, Aflac raises its unsuccessful argument regarding vicarious liability. Dkt. 26 at 12. It also argues that § 64.1200(d)(4) applies only to prerecorded telephone calls. *Id.* This is incorrect: the regulation applies to "a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under

paragraphs (a)(3)(ii) through (v) of this section *or any call for telemarketing purposes*." 47 C.F.R. § 1200(d)(4) (emphasis added).

Mr. Barton has not provided sufficient information about the contents of the February 2025 calls to support an allegation that they violated § 64.1200(d)(4). *See* Dkt. 1 ¶ 246. However, he has sufficiently alleged that the June 16, 2025 call violated § 64.1200(d)(4). *Id.* As alleged, the script used in the June call did not provide Mr. Barton the telephone number of the business. Accordingly, Aflac's motion to dismiss claim six is DENIED as to the June 16, 2025 phone call.

6.      *Claim seven: 47 C.F.R. § 64.1601(e)*

Under 47 C.F.R. § 64.1601(e)(2), those engaged in "telemarketing" are "prohibited from blocking the transmission of caller identification information."

In support of their motion to dismiss count seven, Aflac makes two arguments. First, Aflac contends that § 64.1601 does not create a private right of action, and although courts are split on this question, the courts that have found it creates a private right of action are "vulnerable to appeal." Dkt. 26 at 12–13; Dkt. 50 at 8–9. Mr. Barton responds that the decisions finding in favor of § 64.1601 creating a private right of action are more persuasive. Dkt. 30 at 5–6.

District courts are divided on whether § 64.1601(e) may be enforced through a private right of action. Some have found that § 64.1601(e) "does not expressly convey a private right of action" because it "appears to support consumers' enforcement efforts under the TCPA's subsection c, rather than to create a separate mechanism upon which a consumer can make an actionable claim." *Meyer v. Cap. All. Grp.*, Case No. 15-CV-2405-WVG, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017) (quoting *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017)). Others have

found that § 64.1601(e) was "promulgated under § 227(c), and that a private right of action exists." *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 576 (E.D. Pa. 2025); *see also Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025). One court in this district recently considered this question in *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136, at \*6 (W.D. Wash. Oct. 9, 2025). In *Bright Solar Marketing*, Chief Judge Estudillo found *Newell's* reasoning more persuasive and concluded that § 64.1601(e) creates a private right of action. *Id.* at \*5–6. In the absence of controlling authority, this Court agrees with *Bright Solar Marketing*, adopts the reasoning of *Newell* and *Dobronski*, and concludes that enforcement of § 64.1601(e) is encompassed by the private right of action in 47 U.S.C. § 227(c).

Aflac's second argument is that § 64.1601(e) only regulates the person or entity that engages in telemarketing as defined by 47 C.F.R. § 64.1200(f)(13), "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." Dkt. 50 at 9–10. Aflac contends that they cannot be liable because the telemarketers—not Aflac—initiated the telephone call. *Id.*

Vicarious liability applies here as it does to the other claims under the TCPA. *See Bank v. Consumer Tax Advoc., LLC*, No. 23 CV 9229 (HG) (CLP), 2025 WL 1640500, at \*7 (E.D.N.Y. Feb. 5, 2025) ("Even when the 'seller,' which is defined in regulations as 'the person or entity on whose behalf a [telemarketing] call or message is initiated,' 47 C.F.R. § 64.1200(f)(10), does not initiate the call directly, it may be held vicariously liable for third-party telemarketing calls initiated by the third party." (alteration in original)).

Mr. Barton alleges that calls were made with "spoofed calling numbers," and the "callers had the ability to transmit the name of the telemarketer and intentionally chose not to." Dkt. 1-2

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 15

¶¶ 273, 307. Mr. Barton has plausibly alleged claim seven. Accordingly, Aflac's motion to dismiss claim seven is DENIED.

**B.      State claims**

Before considering Mr. Barton's state-law claims, the Court must consider whether WADAD and WCTSA, like the TCPA, contemplate vicarious liability. Aflac argues that RCW 80.36.390 is "silent as to vicarious liability" and Mr. Barton's state claims should be dismissed because "Aflac did not initiate any of the alleged calls." Dkt. 26 at 13–14.

WADAD and WTCSA are silent as to vicarious liability, and the Washington State Supreme Court has not ruled on the question. However, Courts in this district have applied vicarious liability under these state laws. *See Hollis*, 2025 WL 2711424, at *2 n.3 (noting that WCTSA or RCW 80.36.390 "tracks the TCPA" and analyzing the state and federal statutes together); *Hartman v. United Bank Card Inc.*, No. C11-1753JLR, 2012 WL 4758052, at *5 (W.D. Wash. Oct. 4, 2012) (concluding that WADAD or RCW 80.36.400 encompasses vicarious liability). The Court holds the same. Aflac can be liable for violating RCW 80.36.400 and 80.36.390 if Mr. Barton can establish vicarious liability.

*1.      Claim eight: RCW 80.36.390(2), effective before July 23, 2023*

Under RCW 80.36.390(2), effective before July 23, 2023, "[a] person making a telephone solicitation must identify him or herself and the company or organization on whose behalf the solicitation is being made and the purpose of the call within the first 30 seconds of the telephone call."

The first call occurred on February 3, 2025. Dkt. 1-2 ¶ 246. Mr. Barton purchased an Aflac FEI policy to learn the identity of the telemarketer. *Id.* ¶¶ 231, 237. The second call, following up on the policy that was sold, occurred on the same day. *Id.* ¶ 246. The third call,

selling Aflac's FEI policy, occurred on February 26, 2025. *Id.* The last call occurred on June 16, 2025, pitching an FEI policy from Aflac. *Id.*

Mr. Barton has not sufficiently alleged claim eight as none of the calls occurred during the prior version of RCW 80.36.390(2)'s effective period. In addition, the statutory language that Mr. Barton cites is now codified at RCW 80.36.390(3), so this claim is encompassed by count ten. Accordingly, Aflac's motion to dismiss claim eight is GRANTED.

    2.     *Claim nine: RCW 80.36.390(6)(c), effective June 9, 2022 to July 22, 2023*

Under RCW 80.36.390(6)(c), effective June 9, 2022 to July 22, 2023, if

> the called party states or indicates that he or she does not want to be called again by the telephone solicitor or wants to have his or her name, individual telephone number, or other contact information removed from the telephone lists used by the telephone solicitor . . . [t]he telephone solicitor shall not make any additional telephone solicitation of the called party at any telephone number associated with that party within a period of at least one year.

For the same reasons as claim eight, the Court finds that Mr. Barton has not sufficiently alleged claim nine. *See supra*. The calls attributable to Aflac occurred outside the prior version of RCW 80.36.390(6)(c)'s effective period. Moreover, the statutory language cited by Mr. Barton is substantially similar to the language now codified at RCW 80.36.390(7), so this claim is largely encompassed by count eleven. Aflac's motion to dismiss claim nine is GRANTED.

    3.     *Claim ten: RCW 80.36.390(3)*

Under RCW 80.36.390(3) "[a] person making a telephone solicitation must identify him or herself and the company or organization on whose behalf the solicitation is being made and the purpose of the call within the first 30 seconds of the telephone call." Mr. Barton alleges that "Defendants failed to identify themselves and the purpose of the call as required legally during the first 30 seconds of the phone calls." Dkt. 1-2 ¶ 282.

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 17

Aflac argues that Mr. Barton has not plausibly alleged this claim because he "merely repeats the exact language from the statute without adding any factual allegations." Dkt. 26 at 15 (quoting *Enlink Geoenergy Servs., Inc. v. Jackson & Sons Drilling & Pump, Inc.*, No. C-09-03524 CW, 2010 WL 1221861, at *2 (N.D. Cal. Mar. 24, 2010)). Mr. Barton responds that Aflac's argument stretches the "rule to its logical absurdity," as "[h]ow many more factual allegations can be added to what someone didn't do, beyond that they didn't do it?" Dkt. 30 at 6.

The Court agrees with Mr. Barton and finds that he has plausibly alleged a violation of RCW 80.36.390(3). Under Aflac's argument, Mr. Barton would be required, unnecessarily, to prove a negative fact. *See Barton*, 2025 WL 3078287, at *7 (concluding that plaintiff had successfully alleged a violation of RCW 80.36.390(3) by stating that "[i]n not one of the defendants['] calls to Barton did they 'identify him or herself . . . within the first thirty seconds of the telephone call'" (alterations in original)). Accordingly, Aflac's motion to dismiss claim ten is DENIED.

### 4.    Claim eleven: RCW 80.36.390(6)

Under RCW 80.36.390(6), "[i]f, at any time during the telephone contact, the called party states or indicates they want to end the call, the telephone solicitor must end the call within 10 seconds." Mr. Barton alleges that he "repeatedly asked for no more calls and to be removed from their calling list / be placed on their *do not call* list, and the Defendants ignored those requests and continued calling Barton." Dkt. 1-2 ¶ 285 (emphasis in original).

Aflac argues that Mr. Barton has not identified on which specific calls this occurred. Dkt. 26 at 15–16. Mr. Barton does not dispute Aflac's argument and concedes that, "[i]f needed, [he] can amend the complaint with this information." Dkt. 30 at 7.

The Court agrees with Aflac and finds that Mr. Barton has not plausibly alleged claim eleven. It is unclear from the complaint on which calls Mr. Barton told the callers he wanted to

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 18

end the call and whether the caller complied within ten seconds. Accordingly, Aflac's motion to dismiss claim eleven is GRANTED.

### 5. Claim twelve: RCW 80.36.390(7)

If the called party states that they do not want to be called again or want to have their number removed from the telephone list, RCW 80.36.390(7) requires the telephone solicitor to do the following: First, "inform the called party that his or her contact information will be removed from the telephone solicitor's telephone lists for at least one year." RCW 80.36.390(7)(a). Second, "end the call within 10 seconds." RCW 80.36.390(7)(b). Third, "not make any additional telephone solicitation of the called party at any telephone number that the called party has requested be removed from the solicitor's telephone lists for a period of at least one year." RCW 80.36.390(7)(c).

Aflac again argues that Mr. Barton "does not identify any specific call where this occurred." Dkt. 26 at 16. Mr. Barton does not dispute Aflac's argument and again concedes that, "[i]f needed, [he] can amend the complaint with this information." Dkt. 30 at 7.

In the complaint's table of calls, the row corresponding to the February 26, 2025 call has the "DNC" box checked, which means "Mr. Barton told the caller not to call his phone number again, or the caller told Mr. Barton that his number was already on the caller[']s do-not-call list." Dkt. 1-2 ¶¶ 245–46. A subsequent phone call occurred within a year on June 16, 2025. *Id.* ¶ 246. Mr. Barton has plausibly alleged violations of RCW 80.36.390(7)(a) and (c). Accordingly, Aflac's motion to dismiss claim twelve is DENIED.

### 6. Claim thirteen: RCW 80.36.390(8)

RCW 80.36.390(8) prohibits a "telephone solicitor" from placing "calls to any person which will be received before 8:00 a.m. or after 8:00 p.m. at the call recipient's local time."

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 19

Aflac argues that Mr. Barton's claim "merely repeats the exact language from the statute without adding any factual allegations." Dkt. 26 at 16 (quoting *Enlink Geoenergy Servs., Inc.*, 2010 WL 1221861, at *2). Mr. Barton provides no response. *See* Dkt. 30 at 7.

Mr. Barton has not plausibly alleged claim thirteen. The table of calls Mr. Barton provides in his complaint contains the dates on which the calls were made, but not the times. *See* Dkt. 1-2 ¶ 246. Mr. Barton simply alleges "[t]he telemarketer placed phone calls to [him] before 8am but after 8pm." *Id.* ¶ 291. Given the several defendants named in the complaint, it is unclear whether the "telemarketer" is the telemarketer calling on behalf of Aflac. Even if so, Mr. Barton simply parrots RCW 80.36.390(8)'s language in a confusing manner. Allegations that merely repeat the relevant statutory language are not well-pleaded facts. *DIRECTV, Inc. v. Hoa Hyunh*, 503 F.3d 847, 854 (9th Cir. 2007). Accordingly, Aflac's motion to dismiss claim thirteen is GRANTED.

### 7. Claim fourteen: RCW 80.36.390(9)

Under RCW 80.36.390(9) "[n]o person may initiate, or cause to be initiated, a telephone solicitation to a telephone number registered on the do not call registry maintained by the federal government."

Aflac repeats a prior argument, that Mr. Barton failed to specify which of his cell numbers received the call. Dkt. 50 at 11; *see supra* Section IV.A.2. The Court has construed the use of the plural as a typographical error. *See supra* Section IV.A.2. Additionally, Mr. Barton provided the phone's number in his description of his email to Aflac's counsel. Dkt. 1-2 ¶ 237 ("can you make sure you have [cell phone number] on AFLAC's do not call list?").

Mr. Barton has plausibly alleged a violation of RCW 80.36.390(9). He alleges that the phone number was registered on the DNCR in 2021, Dkt. 1-2 ¶ 63, and that telemarketers called

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 20

this number on Aflac's behalf on February 3, 2025, February 26, 2025, and June 16, 2025. *Id.* ¶ 246. Accordingly, Aflac's motion to dismiss claim fourteen is DENIED.

8.    *Claim fifteen: RCW 80.36.390(10)*

Under RCW 80.36.390(10) "[i]t is unlawful for a person to initiate, or cause to be initiated, a telephone solicitation that violates 47 U.S.C. Sec. 227(e)(1)," which prohibits the "knowing[] transmi[ssion of] misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value."

Aflac argues that Mr. Barton has "fail[ed] to identify any 'misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value,'" because he simply restates 47 U.S.C. § 227(e)(1). Dkt. 50 at 12; Dkt. 26 at 17–18. In response, Mr. Barton points out that he alleged that the calls used spoofed caller identification and the "intent to wrongfully obtain anything of value is obvious." Dkt. 30 at 7; *see* Dkt. 1-2 ¶ 298.

Mr. Barton has not sufficiently alleged a violation of RCW 80.36.390(10). He alleges that "[t]he Defendants" "spoofed calling numbers," Dkt. 1-2 ¶¶ 298, 307, but other than a simple recitation of the statutory language, he does not plead facts establishing the required intent "to defraud, cause harm, or wrongfully obtain anything of value." *Id.* ¶ 298. *See DIRECTV, Inc.*, 503 F.3d at 854. Accordingly, Aflac's motion to dismiss claim fifteen is GRANTED.

9.    *Claim sixteen: RCW 80.36.400(2)*

Under RCW 80.36.400(2), "[n]o person may use an automatic dialing and announcing device for purposes of commercial solicitation." The statute defines "automatic dialing and announcing device" as "a system which automatically dials telephone numbers and transmits a recorded or artificial voice message once a connection is made." RCW 80.36.400(1)(b).

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 21

Aflac argues that "Barton's Complaint fails to plausibly allege that Aflac is vicariously liable for any call that used an automatic dialing and announcing device." Dkt. 50 at 12; Dkt. 26 at 18.

The Court disagrees and finds that Mr. Barton has sufficiently alleged at least one violation of RCW 80.36.400(2). Mr. Barton alleges that "Defendants used an automatic dialing and announcing device to initiate all the robocalls described above to Barton's phone numbers and then play[ed an] artificial or prerecorded voice if and when the call was answered." Dkt. 1-2 ¶ 302. He also alleges that the June 15, 2025 call was prerecorded. *Id.* ¶ 246. Accordingly, Aflac's motion to dismiss claim sixteen is DENIED.

## V.    CONCLUSION

For the foregoing reasons, the Court DENIES IN PART Aflac's motion to dismiss (Dkt. 26) as to claims one, two, five, six, seven, ten, twelve, fourteen, and sixteen. The Court also GRANTS IN PART Aflac's motion to dismiss as to claims three, eight, nine, eleven, thirteen, and fifteen. These claims, as pled against Aflac, are DISMISSED WITHOUT PREJUDICE for failure to state a claim.

If Mr. Barton wishes to continue pursuing these claims against Aflac, he may amend his complaint. *See Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts.") (citation modified) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). Any amended complaint must be filed no later than February 4, 2026. The Court will rule on the pending motions to strike the other defendants' answers (Dkts. 43, 44) after it learns whether Mr. Barton intends to amend his complaint.

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS'S MOTION TO DISMISS - 22

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 22nd day of January, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART AMERICAN FAMILY LIFE ASSURANCE
COMPANY OF COLUMBUS'S MOTION TO DISMISS - 23